UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

BRENT MICHAEL LABORDE

CIVIL ACTION

VERSUS

NO. 11-544-JJB

SGS NORTH AMERICA, INC.

**RULING ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

This matter is before the Court on Defendant SGS North America, Inc.'s ("SGS") motion for partial summary judgment on Plaintiff Brent Michael Laborde's ("Laborde") unseaworthiness cause of action. (Doc. 44). Laborde has filed an opposition (Doc. 48), to which SGS has filed a reply. (Doc. 49). Oral argument is not necessary. The Court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Court DENIES the motion.

I.

Laborde filed this action pursuant to the Jones Act, 46 U.S.C.A. § 30104 for personal injuries sustained while moving a heavy coil of rope on the M/V Helen G, which was owned, operated, and maintained by SGS. (Doc. 1). Laborde alleged that SGS was negligent and the M/V Helen G was unseaworthy. SGS has filed a motion for partial summary judgment on Laborde's unseaworthiness claim. (Doc. 44). SGS argues that the coil of rope on the M/V Helen G did not affect the operation of the vessel, did not prevent anyone on board from performing their job, and did not prevent anyone on board from

1

boarding or departing the port side. The vessel itself, SGS contends, had no role in Laborde's injuries.

A ship owner has a duty to "furnish a vessel and appurtenances reasonably fit for their intended use." *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 550 (1960). SGS points out that there is a distinction between liability based upon unseaworthiness and liability based upon negligence. *Usner v. Luckenbach*, 400 U.S. 494, 498 (1971). The Supreme Court of the United States has stated that "unseaworthiness is a condition, and how that condition came into being-whether by negligence or otherwise-is quite irrelevant to the owner's liability for personal injuries resulting from it." *Id.* An "isolated, personal negligent act" of crew members does not render a ship unseaworthy, and to find otherwise would "subvert the fundamental distinction between unseaworthiness and negligence." *Id.* at 500.

In order to establish causation in an unseaworthiness claim, a plaintiff must demonstrate that the "unseaworthy condition played a substantial part in bringing about or actually causing the injury and that the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Johnson v. Offshore Express, Inc.*, 845 F.2d 1347, 1354 (5th Cir. 1988).

SGS argues that Laborde cannot show that the M/V Helen G was not reasonably fit for its intended use at the time he sustained his injuries. SGS points out that there is no evidence showing that the vessel was affected by the coil of rope, which was on board for approximately one week prior to Laborde's

accident. Moreover, SGS contends that the crew members were able to perform their job duties with the coil on board.

Additionally, SGS argues that Laborde cannot meet the requisite proximate causation standard because there was no condition on the vessel that played a "substantial part in bringing about or actually causing" Laborde's injury. SGS notes that it is arguable that Laborde's allegations could support a finding of Jones Act negligence, but any "isolated, personal negligent act" has no bearing on an unseaworthy condition.

In his opposition, Laborde discusses the timeline of events on April 26, 2011, the date of his injury. (Doc. 48). At approximately 4:00 p.m., another crewmember, Brandon Castle, came on duty and Laborde chose to stay late to help him with cutting the coil of rope. Laborde points out that Castle was not trained nor was he familiar with cutting dock line and he had never attended a safety meeting about how to cut dock line. Captain Kelley had advised Laborde to cut the rope into certain lengths but did not advise Laborde how to cut the rope. Laborde argues that the "actual procedure customarily used by SGS to cut dock lines is a material issue which is genuinely disputed," and the "means by which SGS communicated policy or procedure for cutting dock lines is also a disputed issue.' (Doc. 48 at 3).

Laborde then discusses several testimonies concerning SGS's policy and procedure for cutting a coil of rope into dock lines. Laborde first points to his own testimony and Captain Beck's testimony, which provided that the policy and

3

procedure for cutting the rope into dock lines was to perform it on the dock instead of on the vessel. Laborde then notes that the director of operations for SGS and an SGS pilot testified that that there were no policies or procedures in place for cutting dock line. Laborde points to the testimony of the pilot who rolled the coil in issue on board, noting that while the pilot intended for the coil to fall on a catwalk over the stern of the vessel, the coil actually fell onto the walkway.

    Laborde continues by pointing out the inconsistencies in testimony about whether the coil was upright or "lying jammed on the deck of the vessel in between the grating over the flanking rudder and the port-side bulwarks." (Doc. 48 at 10). An SGS tankerman testified that he stood the coil of rope upright prior to Laborde's injury, but Laborde and Castle test6ified that the coil of rope was not upright, but was "jammed" on the deck. Laborde also points to SGS's argument that there was no need to move the coil despite the pilot's testimony that the rope would fall apart if the retaining ropes were cut.

    Laborde notes that regardless of whether the coil was standing up or not, it was blocking the walkway for over a week. An operations manager for SGS testified that a coil of rope that blocked a walkway violated company policy. Laborde points out that SGS has argued that crewmembers could get around the coil by using a walkway.

    Laborde argues that maritime law requires that a ship owner maintain a ship, which includes the decks, passageways, appliances, and equipment. Laborde further argues that unseaworthiness can be shown by an unsafe method

of work. In *Johnson v. Offshore Express, Inc.*, the United States Court of Appeals for the Fifth Circuit noted that under general maritime law, "unseaworthiness can be manifested by an unsafe method of work, such as the failure by a shipowner to provide adequate equipment for the performance of an assigned task." *Johnson,* 845 F.2d at 1354-55. Additionally, an "understaffed, or ill-trained, crew" can create an unseaworthy vessel." *Brown v. Cliff's Drilling Co.*, 638 F.Supp. 1009, 1014 (E.D. Tex. 1986). In *Brown v. Cliff's Drilling Co.*, the Eastern District of Texas found that "[b]y not training, instructing, or supervising the employees, Cliff's Drilling had created an unseaworthy condition and that unseaworthy condition was one of the causes of the Plaintiff's injuries." *Id.*

Laborde argues that the Eastern District of Louisiana has found that there is a distinction between "transitory unseaworthiness" and "instant unseaworthiness." *Landry v. Chet Morrison Contractors, LLC*, 2011 WL 6140740, *4 (E.D. La. 2011). In *Landry*, the court found that a "temporary condition that makes the vessel unfit can be an unseaworthy condition." *Id.* The law distinguishes between "transitory unseaworthiness," which gives rise to liability, and "instant unseaworthiness[,] caused by a single unforeseeable act of operational negligence." *Id.* (citations and quotations omitted). A transitory condition, like a permanent defect, will make a ship unseaworthy. *Id.* Laborde argues that an untrained crew or an unsafe policy constitutes unseaworthiness, even if it is temporary and "occasioned by a negligent act." (Doc. 48 at 10).

Laborde argues that the lack of procedure or policy for cutting dock line, combined with the rope blocking the walkway and an untrained or improperly trained crew all create an unseaworthy condition that brought about his injury. Laborde further contends that these are all facts that are in dispute, therefore creating a genuine issue of material fact to defeat SGS's motion for summary judgment.

In its reply, SGS first argues that while Laborde argues that an untrained crew or an unsafe policy or procedure can create an unseaworthy condition, Laborde fails to show evidence that the rope created a situation where the vessel was "not reasonably fit for its intended purpose." (Doc. 49 at 1). SGS argue that for the week that the rope sat on the vessel, the M/V Helen G continued to operate normally. SGS then argues that while Laborde mentions that the rope may have been blocking access to a fuel tank, his argument fails. While the Court does not see this specific argument in Laborde's opposition, the Court will still discuss SGS's counter-argument. SGS first argues that access to the fuel tank did not have any bearing on Laborde's accident because Laborde was not attempting to access the tank at the time of his accident. Moreover, SGS points out that even though the port side was blocked, there was still access to the tank on the port side.

SGS further argues that the coil of rope was moved upright prior to Laborde's accident and that testimony shows that the rope did not affect crewmembers' ability to walk on the boat and perform job functions. Additionally,

6

SGS contends that any contradiction in testimony concerning whether the rope was upright or not is "easily explained by [Laborde] attempt[ing] to move the coil of rope on his own, without any help, before enlisting the help of Mr. Castle." (Doc. 49 at 2). SGS points to Laborde's medical records, in which he described the cause of his injury as picking up a rope and it fell. SGS argues that this is a statement against Laborde's interest, which shows that he attempted to move the coil on his own.

SGS argues that Laborde's argument focusing on the proper procedure, whether the rope was blocking the walkway, and whether the crewmembers were trained do not address the issue of whether the M/V Helen G was unseaworthy. SGS maintains that Laborde's accident was caused by his moving the rope without assistance, and this does not constitute an unseaworthy condition on the vessel. Moreover, the "events that led to the coil of rope being placed on the back deck" do not render the M/V Helen G unfit for its intended purpose.

## II.

A motion for summary judgment should be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c). If the issue is one in which the movant bears the burden of proof at trial, the movant must demonstrate the absence of material facts and entitlement to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 321 (1986).

If the movant does so, in order to survive the motion for summary judgment, the nonmovant must show that a genuine issue of material fact remains for the fact-finder to resolve. *Id.* at 323. A "genuine issue of material fact" exists only when a reasonable fact-finder could return a verdict in the nonmovant's favor. *Id.* at 248. In either case, the court must construe all facts in the light most favorable to the nonmovant and draw all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To establish a claim of unseaworthiness, the plaintiff must show that the "owner has failed to provide a vessel, including her equipment and crew, which is reasonably fit and safe for the purpose for which it is to be used." *Boudreaux v. United States*, 280 F.3d 461, 468 (5th Cir. 2002) (citation and quotations omitted). Unseaworthiness can be "manifested by an unsafe method of work, such as the failure by a shipowner to provide adequate equipment for the performance of an assigned task." *Johnson,* 845 F.2d at 1354-55. Moreover, the plaintiff must show a "causal connection between his injury and the breach of duty that rendered the vessel unseaworthy." *Id.* The unseaworthy condition must play a "substantial part in bringing about or actually causing the injury and . . . the injury was either a direct result or a reasonably probable consequence of the unseaworthiness." *Id.* at 1354.

Here, the Court finds that Laborde has demonstrated that there is a genuine issue of material fact concerning the seaworthiness of the vessel. A reasonable fact-finder could determine that the owner of the M/V Helen G failed

8

to provide adequate equipment to cut the rope and that this constituted an unseaworthy condition that played a substantial part in bringing about Laborde's injuries or was a reasonably probable consequence of the unseaworthiness.

Accordingly, the Defendant's Motion for Partial Summary Judgment on Plaintiff's Unseaworthiness Claim is DENIED. (Doc. 44).

Signed in Baton Rouge, Louisiana on November 29th, 2012.

**JAMES J. BRADY, DISTRICT JUDGE**
**MIDDLE DISTRICT OF LOUISIANA**